DIANA L. RUMFORD, f/k/a Diana L. Leonard, Indiv., and on Behalf of Others Similarly Situated, Plaintiff-Appellant, v. COUNTRYWIDE FUNDING CORPORATION, Defendant-Appellee.

Second District    No. 2—96—0891

Opinion filed April 3, 1997.—Rehearing denied May 2, 1997.

C. William Bockelman, Jr., of O'Neill & Bockelman, P.C., of Lake Forest, and Kevin E. Bry, of Law Offices of Kevin E. Bry, of Oak Park, for appellant.

George A. Platz and Malik R. Diab, both of Lovell, White & Durrant, of Chicago, for appellee.

JUSTICE McLAREN delivered the opinion of the court:

Plaintiff, Diana L. Rumford (f/k/a Diana L. Leonard), filed a two-count amended complaint against defendant, Countrywide Funding Corporation, alleging breach of contract and violation of the Consumer Fraud and Deceptive Business Practices Act (the Act) (815 ILCS 505/1 *et seq.* (West 1994)). The parties filed cross-motions for summary judgment. Following a hearing, the court granted defendant's motion. Plaintiff appeals, and we reverse and remand. ·

Plaintiff filed her amended complaint as a class action on behalf of herself and all others similarly situated. She defined the class as all people who entered into mortgage contracts with defendant, whereby defendant agreed under the terms of the contracts to release the mortgage instruments without charge when the mortgages were paid off, but then imposed an additional charge at the time the mortgages were released.

In her amended complaint, plaintiff alleged that she entered into a mortgage contract with defendant. Plaintiff provided security to defendant for the repayment of a $30,000 note. Paragraph 21 of the mortgage contract provided "Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recorda-

tion costs." On or about November 22, 1993, defendant sent a letter, entitled "STATEMENT OF ACCOUNT FOR PAYMENT IN FULL," (hereinafter account statement or payoff letter) to plaintiff's attorney. Plaintiff attached the payoff letter and the contract to the complaint. In addition to the outstanding principal balance and interest, the payoff letter included a $50 "reconveyance/statement fee" and a $15 "prepayment penalty/other" charge. These amounts were included in the balance of $26,786.21 needed to pay the account in full. Plaintiff paid the total amount due, including the $50 and $15 fees, and obtained a release deed from the defendant.

■ Count I of the amended complaint alleged breach of contract. Plaintiff alleged that she performed all of the terms and conditions of the mortgage contract, but that defendant breached the contract by charging fees in violation of the contract's express terms. Count II alleged a violation of section 2 of the Act (815 ILCS 505/2 (West 1994)), which declares as unlawful:

> "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact ***." 815 ILCS 505/2 (West 1994).

Defendant moved for summary judgment, relying on the affidavit of one of its first vice-presidents, Rick Wilson. The gist of the motion was that only fees for releasing the mortgage were prohibited, and the fees defendant assessed plaintiff were not for releasing the mortgage. Wilson stated in his affidavit that he has worked in defendant's remittance processing division since February 1992 and has been in the mortgage business for 23 years. Wilson had personal knowledge of defendant's policies with respect to providing account statements to customers. Wilson stated that defendant accepts account statement requests from its customers or its customers' agents. When defendant receives such a request, it generates an account statement by computer. Defendant also updates the customer's file and provides the customer with an amended statement if any changes occur that would affect the amount listed in the original statement.

Wilson further stated that defendant charges its customers $50 for processing the request for an account statement. The charge is intended to compensate defendant for providing an amended statement when necessary. Defendant bills its customers for this service by including the $50 fee on the account statement. Defendant will send the statement to the customer by facsimile if the customer so

requests. The fee for doing so is $15. According to Wilson, defendant informs the individual requesting the statement that there is an additional charge for receiving the statement by facsimile and so informed plaintiff's attorney when she requested the account statement.

Wilson's affidavit further stated that defendant releases a customer's mortgage when the principal and interest are paid in full. If a customer pays the principal and interest, but not the $50 and $15 fees, defendant will still release the mortgage even though the customer remains liable for the fees. On hundreds of occasions, defendant has released mortgages when a customer who is liable for statement and facsimile fees did not pay those fees. According to Wilson, plaintiff's attorney requested the account statement. Defendant charged plaintiff $50 for processing the statement request and $15 to send it by facsimile. Plaintiff never asked defendant to release her mortgage without payment of the fees. If she would have paid principal and interest only, defendant would have released the mortgage, but plaintiff still would have been liable for the fees.

In response, plaintiff also moved for summary judgment. In her supporting memorandum, plaintiff reiterated the allegations of her complaint regarding the language of the contract and the payoff letter. She attached the payoff letter to her memorandum. Plaintiff argued that defendant was now trying to rewrite the payoff letter by stating that a "reconveyance/statement fee" is a fee for processing a request for an account statement and that a "prepayment penalty/other" is a facsimile fee. Plaintiff further argued that the explanation for the charges is irrelevant because the contract provides that the mortgage is to be released without charge to the borrower. With respect to Wilson's statement that a mortgage would be released upon payment of only principal and interest, plaintiff pointed out that such an assertion was not made in the payoff letter and that defendant included the charges in the amount necessary to pay the account in full.

Defendant filed a reply in which it argued that Wilson's affidavit was uncontroverted and refuted the allegations of the complaint. Defendant argued that plaintiff was not charged for the release of her mortgage. Defendant further argued that payment of plaintiff's note was to be made in California and that California law allows a mortgagee to charge a fee, not to exceed $60, for an account statement. In support, defendant filed a supplemental affidavit of Rick Wilson. In the affidavit, Wilson states that a customer may find out an account balance by speaking to a customer service agent, by using defendant's automated balance service, by referring to the quarterly

report that summarizes the account status, or by requesting an account statement. Defendant only charges borrowers who request an account statement. Wilson further stated that plaintiff's note required her to make payments to defendant's California office.

Following a hearing, the court entered summary judgment for defendant, and plaintiff timely appealed. On appeal, plaintiff argues that defendant's evidence was inherently incompetent, suspect, and/or unbelievable. Plaintiff asks us to reverse the trial court's decision and enter summary judgment in her favor or, in the alternative, to reverse and remand the cause for further proceedings.

■ Summary judgment is properly granted if "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2—1005(c) (West 1994). The purpose of summary judgment is not to try questions of fact, but to determine whether such questions exist. *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511, 517 (1993). In determining whether a genuine issue of fact exists, the court must construe the evidence strictly against the moving party. *Guerino v. Depot Place Partnership*, 273 Ill. App. 3d 27, 30 (1995). The nonmovant need not prove his case at the summary judgment stage (*Bickerman v. Wosik*, 245 Ill. App. 3d 436, 438 (1993)), but must come forward with evidentiary material that establishes a genuine issue of material fact (*Salinas v. Chicago Park District*, 189 Ill. App. 3d 55, 59 (1989)). Summary judgment will be granted only when the right of the moving party is clear and free from doubt. *Guerino*, 273 Ill. App. 3d at 30.

We review summary judgment orders *de novo*. *Monticello Insurance Co. v. Wil-Freds Construction, Inc.*, 277 Ill. App. 3d 697, 701 (1996). Where the parties file cross-motions for summary judgment, they invite the court to decide the issues presented as a question of law. *Giannetti v. Angiuli*, 263 Ill. App. 3d 305, 312 (1994). Nevertheless, where there are factual questions on material issues, summary judgment is inappropriate. *Giannetti*, 263 Ill. App. 3d at 312.

■ Both parties argue on appeal that they were entitled to summary judgment. However, our review of the record indicates that there were material issues of fact, and summary judgment should not have been granted for either side. In *Giannetti*, we stated the rules for when summary judgment should be granted in a contract case:

"Summary judgment is a proper procedure where only the construction of language and the validity of a contract are at issue [citation] and there is no dispute as to the language and forma-

tion of the agreement [citation]. However, it is a question of fact whether a breach of contract has occurred [citation] or whether the agreement contains an ambiguity which requires the admission of extrinsic evidence [citation]. Summary judgment is particularly inappropriate where *** the parties seek to draw inferences on questions of intent." *Giannetti*, 263 Ill. App. 3d at 312-13.

Defendant argues that, because plaintiff did not file counteraffidavits, the trial court properly entered summary judgment for defendant. We disagree. We explained in *Pease v. International Union of Operating Engineers Local 150*, 208 Ill. App. 3d 863, 874 (1991), that, where a movant in a summary judgment proceeding supplies uncontradicted facts that would entitle the movant to a judgment as a matter of law, the nonmovant cannot rely on his complaint or answer alone to raise a genuine issue of material fact. We also explained that, "even though a party opposing a motion for summary judgment fails to file counteraffidavits, the movant is not entitled to summary judgment unless his motion and supporting affidavits establish his right to summary judgment as a matter of law." *Pease*, 208 Ill. App. 3d at 874.

■ Here, plaintiff was not relying on her complaint alone to raise a genuine issue of material fact. She was relying on the contract between the parties and the account statement that was generated by defendant's own payoff department. Wilson's affidavit contradicted those documents. Rather than establishing defendant's right to a judgment as a matter of law, Wilson's affidavit created the fact questions. Plaintiff relied on a contract that provided "Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower" and an account statement supplied by defendant that included in her account balance a "reconveyance/statement fee" of $50 and a "prepayment penalty/other" charge of $15. Wilson's affidavit was an explanatory denial of what the payoff letter indicates. By stating that a "reconveyance/statement fee" was really a fee for processing plaintiff's request for a statement of her account balance and that a "prepayment penalty/other" was a facsimile fee, Wilson's affidavit did nothing more than create questions of material fact as to whether defendant breached the contract. To grant summary judgment for defendant, the trial court would have had to do what the court is not supposed to do at the summary judgment stage—weigh the evidence. Further, the trial court would have had to make a credibility determination that Wilson was telling the truth in his affidavit, although that affidavit was contradicted by documents generated by defendant.

We wish to reiterate that, although uncontradicted statements of fact in an affidavit must be taken as true for purposes of a summary judgment motion, the moving party is not entitled to summary judgment merely because the opposing party fails to file a counteraffidavit. Here, the documents attached to plaintiff's complaint—the contract and the payoff letter—contradicted Wilson's affidavit, and plaintiff was entitled to rely on that evidence to create a genuine issue of material fact.

We find that the contradictions between the payoff letter and the affidavit created fact questions precluding summary judgment on both the breach of contract and the consumer fraud counts. Defendant argued in the trial court that summary judgment was proper on the consumer fraud claim because the Act has been held not to apply to simple breach of contract claims. See *Golembiewski v. Hallberg Insurance Agency, Inc.*, 262 Ill. App. 3d 1082, 1093 (1994). However, we find that plaintiff's consumer fraud claim was not based on a simple breach of contract but on an allegation that defendant was engaged in a pattern of misrepresenting to customers that additional charges would not be assessed at the time their mortgages were released. For the reasons previously stated, we find that material issues of fact remained on this issue.

The judgment of the circuit court of Lake County is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

BOWMAN and THOMAS, JJ., concur.