**Brian SMALE, et al., Plaintiffs,**

v.

**CELLCO PARTNERSHIP d.b.a. Verizon Wireless, et al., Defendants.**

**Case No. C07–1639RAJ.**

United States District Court, W.D. Washington, at Seattle.

April 4, 2008.

Daniel Foster Johnson, David Elliot Breskin, Roger M. Townsend, Breskin Johnson & Townsend PLLC, Amy C. Williams–Derry, John H. Bright, Mark Adam Griffin, Keller Rohrback, Seattle, WA, for Plaintiffs.

Fred B. Burnside, Stephen M. Rummage, Charles S. Wright, Davis Wright Tremaine, Seattle, WA, for Defendants.

ORDER

RICHARD A. JONES, District Judge.

## I. INTRODUCTION

This matter comes before the court on the motion of Defendant Cellco Partnership ("Verizon") to dismiss this action (Dkt. # 20) and its motion for a protective order staying discovery (Dkt. # 23). The court has considered the motions and the parties' submissions in support and in opposition, and has heard from the parties at oral argument. For the reasons stated below, the court GRANTS the motion to dismiss (Dkt. # 20) with leave to amend, and DENIES the motion for protective order (Dkt. # 23) as moot.

## II. BACKGROUND

Plaintiffs Brian Smale, Dan Junt, and Julie Cooper purchase their mobile phone service from Verizon. Each Plaintiff accepted Verizon's Customer Agreement (the "Agreement") when he or she became a Verizon customer. The Agreement, under the heading "Charges and Fees We Set," states in relevant part as follows:

> You agree to pay all access, usage, and other charges and fees we bill you.... These include Federal Universal Service, Regulatory and Administrative Charges, and may also include other charges related to our governmental costs. We set those charges. They aren't taxes, aren't required by law, are kept by us in whole or in part, and the amounts and what's included are subject to change.

Agreement at 3.[1] Verizon includes substantially the same disclosure in its "Customer Information Overview," which is apparently attached to the Agreement:

> Verizon Wireless' Surcharges
> Your bill will include charges to recover or help defray costs of taxes and of governmental surcharges and fees imposed on us, and costs associated with government regulations and mandates on our business. The charges include a Regulatory Charge, which helps defray

---

1. The court cites the version of the Agreement found at Exhibit A to the Declaration of Beronica Murrieta. The record reveals no material difference between the versions of the Agreement that bound each of the three Plaintiffs.

costs of various mandates, an Administrative Charge and a Federal Universal Service Charge to recover costs imposed on us by the government to support universal service. These charges are Verizon Wireless charges, not taxes, and are subject to change.

Murietta Decl., Ex. D.[2]

Each Plaintiff receives a monthly invoice from Verizon, which contains the following "Explanation of Charges":

Verizon Wireless' Surcharges

Verizon Wireless Surcharges include charges to recover or help defray costs of taxes and of governmental charges and fees imposed on us, including a Regulatory Charge (which helps defray costs of various regulatory mandates, including government number administration and license fees) and a Federal Universal Service Charge (and, if applicable, a State Universal Service Charge) to recover costs imposed on us by the government to support universal service, and may include other charges also related to our governmental costs. It also includes an Administrative Charge, which helps defray certain costs we incur, currently including (i) charges we, or our agents, pay local telephone companies for delivering calls from our customers to their customers, (ii) fees and assessments on network facilities and services, and (iii) certain costs and charges associated with proceedings related to new cell site construction. Please note that these are Verizon Wireless charges, not taxes. These charges, and what's included, are subject to change from time to time.

Murietta Decl., Exs. G–I. In each invoice, under the heading "Verizon Wireless' Surcharges," each Plaintiff is assessed a "Fed Universal Service Charge," a "Regulatory Charge," an "Administrative Charge," and an "Effect of City Tax." Murietta Decl., Exs. H–G (recent invoice for each Plaintiff).

It is the "Effect of City Tax" that has spurred this lawsuit. Plaintiffs assert four claims. They allege that Verizon failed to disclose that it would assess the "Effect of City Tax," and is thus liable for breach of the Agreement and for violations of the Washington Consumer Protection Act ("CPA"). Plaintiffs also claim unjust enrichment and request declaratory judgment.

### III. ANALYSIS

Verizon moves to dismiss Plaintiffs' claims on two grounds. It asserts that Plaintiffs have not alleged any unlawful conduct, and that the claims of Plaintiffs Smale and Junt are barred by a 2004 settlement that a California court entered in a nationwide class action against Verizon.

### A. Standard of Review on a Motion to Dismiss

Where a defendant alleges that a plaintiff's factual allegations are insufficient to state a claim, the court reviews the allegations under the liberal pleading standard of Fed.R.Civ.P. 8(a). The court construes all allegations in the light most favorable to the nonmoving party. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir.2005). The court must accept all well-pleaded facts as true

**2.** At oral argument, counsel for Verizon suggested that customers also receive a "service summary" shortly after entering the Agreement, and that this document includes an estimate of Verizon's surcharges. This document is not part of the record before the court. Even if it were, it is likely beyond the scope of the court's consideration on a motion to dismiss.

and draw all reasonable inferences in favor of the plaintiff. *Wyler Summit P'ship v. Turner Broad. Sys., Inc.,* 135 F.3d 658, 661 (9th Cir.1998). A complaint need not contain detailed factual allegations, but it must provide the grounds for entitlement to relief and not merely a "formulaic recitation" of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly,* —— U.S. ——, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007). Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974.

Alternatively, where a defendant successfully challenges a plaintiff's legal theory, rather than the sufficiency of the plaintiff's allegations, the court must also dismiss the complaint. *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir.1990) ("Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.").

The court's review of the record on a Rule 12(b)(6) motion is generally limited to the complaint itself. *Marder v. Lopez,* 450 F.3d 445, 448 (9th Cir.2006). The court may, however, consider evidence on which the complaint necessarily relies as long as "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Id.* The court may also rely on facts subject to judicial notice. *United States v. Ritchie,* 342 F.3d 903, 908 (9th Cir.2003).

**B. Plaintiffs' Complaint Does Not Reach The Amount of the Effect of City Tax or Verizon's Methodology for Assessing It.**

Inconsistencies between Plaintiffs' complaint and their response to the instant motion to dismiss require the court to consider, as a threshold matter, the scope of Plaintiffs' First Amended Complaint ("Complaint")[3]. The Complaint speaks exclusively in terms of Verizon's failure to disclose the Effect of City Tax charge. Plaintiffs seek to represent a class of Verizon customers who paid the Effect of City Tax "that was either not disclosed, or that was disclosed pursuant to unenforceable terms or otherwise in violation of Washington law." ¶¶ 1.1–1.3. Each Plaintiff's Agreement failed to "disclose an 'Effect of City Tax' as one of the charges to Washington State consumers." ¶ 2.3. Verizon allegedly "did not provide a description or explanation of the 'Effect of City Tax' " in its monthly invoices. ¶ 2.19. According to Plaintiffs, the "failure to disclose an 'Effect of City Tax' charge is an act or practice that has the capacity to deceive Washington State consumers." ¶ 2.32.

Nowhere in the Complaint is there an allegation that the Effect of City Tax is excessive or that Verizon has improperly calculated it. Plaintiffs claim that Verizon breached the Agreement by assessing a charge that the contract does not permit, that Verizon violated the CPA by assessing the charge without disclosing it, and that collecting the charge unjustly enriched Verizon. Nonetheless, in their opposition to the motion to dismiss, Plaintiffs state that they have sought discovery revealing "how the Effect of City Tax is 'related' to Verizon's 'governmental costs,' if at all." Opp'n at 3. They state that Verizon does not reveal "what portion of the surcharge represents actual out-of-pocket costs and what amount is attributed to purported overhead in administering the tax." *Id.* Plaintiffs suggest that "Verizon Wireless may be charging twice for its internal administrative costs through both the 'Administrative Fee' and the 'Effect of

---

**3.** The court will cite the Complaint using bare "¶" symbols.

City Tax' fee." *Id.* at 6. Despite these assertions, Plaintiffs' legal argument in opposition to the motion to dismiss is devoted exclusively to whether Verizon has adequately disclosed that it will charge an Effect of City Tax, and whether the Agreement is illusory to the extent it permits Verizon to impose this charge.

At oral argument, Plaintiffs' counsel searched in vain for any assertion in the Complaint that would put Verizon on notice that *the amount* of the Effect of City Tax was at issue. Counsel referred to these missing allegations as "lesser included allegations," an interesting turn of phrase, but not one that changes Plaintiffs' obligation to use their Complaint (as opposed to their opposition to a motion to dismiss) to place Verizon on notice of their claims. The court rejects the assertion that claims about the amount of the Effect of City Tax are implicit in the Complaint. The court also rejects Plaintiffs' assertion that their prayer for relief, which includes a request for "reimbursement of all improperly paid amounts," is sufficient to put Verizon on notice that the amount of the Effect of City Tax is at issue. ¶ 9.2.

Under these circumstances, the court holds that the Complaint raises only claims based on failure to disclose the Effect of City Tax surcharge. Nothing in the Complaint gives Verizon notice that it must defend the amount it charges as an Effect of City Tax, or its methodology for determining it. Instead, the Complaint *directs* Verizon to defend its disclosure of the Effect of City Tax fee. Verizon prepared the instant motion to dismiss accordingly, mentioning the amount of the Effect of City Tax only once, in a footnote. Mot. at

16 n. 12 ("To the extent plaintiffs' claims go beyond non-disclosure and relate to whether Verizon is permitted to bill and collect the fee, that claim is preempted by the Federal Communications Act.") (citing cases). Plaintiffs did not respond to Verizon's preemption concerns. Even at oral argument, Plaintiffs failed to acknowledge that Verizon had raised the preemption issue. For these reasons, the court finds that claims attacking the amount Verizon charges for the Effect of City Tax, or its method of calculating the charge, are beyond the scope of the Complaint. This ruling is without prejudice to Plaintiffs properly asserting of such claims.

## C. Plaintiffs' Allegations Are Insufficient to Sustain Any of Their Four Claims.

Having established that Plaintiffs' claims are limited to those arising from Verizon's alleged failure to disclose the Effect of City Tax, the court turns to an examination of Verizon's disclosures. The court begins with the Agreement itself,[4] which discloses three specific categories of Verizon surcharges: Federal Universal Service charges, Regulatory Charges, and Administrative Charges. Agreement at 3. It does not expressly disclose an Effect of City Tax charge, but instead discloses the possibility of unnamed other charges. *Id.* (stating that charges "may *also* include *other charges* related to our governmental costs") (emphasis added). The Agreement further states that such charges "aren't taxes, aren't required by law, are kept by us in whole or in part, and the amounts and what's included are subject to change." *Id.*

**4.** Plaintiffs did not attach the Agreement, the Customer Information Overview, or their invoices to the Complaint. The court relies on them, however, because the Complaint explicitly or implicitly refers to each of these documents, they are essential to Plaintiffs' non-disclosure claims, and there is no question as to the authenticity of the documents. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003).

The Agreement unambiguously states that Verizon may assess other kinds of charges, with the restriction that such charges must be "related to [its] governmental costs." Plaintiffs do not propose an alternate interpretation of this clause, they merely assert that "no rational consumer would read the [Agreement] and expect to be charged the Effect of City Tax fee." Opp'n at 12. This is literally true, but only because a consumer lacking the gift of premonition would have no idea what label Verizon might place on the additional charges it expressly reserves the right to assess. But any reasonable consumer reading the Agreement would realize that Verizon reserved the right to assess surcharges (however named) that are "related to" its governmental costs. Plaintiffs cite no authority for the proposition that a contract must preassign a label to charges that it imposes, and the court is aware of none.[5]

Verizon's other disclosures similarly reveal that Verizon reserves the right to assess unnamed fees "related to" its government costs. The "Customer Information Overview" includes a statement that customers' bills "will include charges to recover or help defray costs of taxes and of governmental surcharges and fees imposed on us." The overview states that "[t]he charges include" the Federal Universal Service Charge, the Regulatory Charge, and the Administrative charge. This disclosure is perhaps more limiting than the Agreement itself, because it does not explicitly state that Verizon reserves the right to impose other charges in addition to the three charges disclosed. Instead, it states that its governmental-surcharge-related costs will "include" those three categories. Standing alone, this disclosure is at least arguably unclear as to the possibility of additional charges, because it does not state that such charges "include, but are not limited to," those three categories. But, reading this disclosure in conjunction with the Agreement, which explicitly discloses Verizon's right to assess other governmental-cost-related charges, there is no lack of clarity.

Finally, Verizon's invoices to customers include a disclosure substantially identical to those in its "Customer Information Overview" and the Agreement, with two important differences. First, the disclosure is beneath the headings "Explanation of Charges" and "Verizon Wireless' Surcharges." These headings are particularly illuminating because the invoice contains a section entitled "Verizon Wireless' Surcharges," in which Verizon assesses the Federal Universal Service Charge, the Regulatory Charge, the Administrative Charge, and the Effect of City Tax that has given rise to this litigation. A customer who did not understand the "Effect of City Tax" assessment would naturally seek out the invoice's "Explanation of Charges," and find the section describing Verizon's surcharges. That section would explain that the Effect of City Tax is a "charge[ ] to recover or help defray costs of taxes and of governmental charges and fees imposed on" Verizon, and would explain that it is a "Verizon Wireless charge[ ], not [a] tax[ ]." Again, the "Explanation of Charges" does not expressly identify the "Effect of City Tax," but it asserts that the surcharges "may include other charges also related to our governmental costs."

The court concurs with Plaintiffs' assertion that none of the documents described

---

**5.** Neither *Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.*, 162 Wash.2d 59, 170 P.3d 10 (2007) nor *Dwyer v. J.I. Kislak Mortgage Corp.*, 103 Wash.App. 542, 13 P.3d 240 (2000) support Plaintiffs' disclosure claims, as the court will discuss in Part III.C.2, *infra*.

above explains what the Effect of City Tax fee is,[6] or how Verizon calculates the fee. A reasonable customer reviewing the documents would know only that the fee is somehow "related to" Verizon's government costs.

The court finds, however, that Verizon's failure to provide documentation specifically addressing the Effect of City Tax fee is unimportant. While a reasonable consumer might wish to know more about the fee, Plaintiffs present no authority for the proposition that Verizon must provide that information as part of its consumer contract. Customers who contacted Verizon with questions about the nature of the fee might have a claim if Verizon refused to provide such information or made misleading statements, but that is not the case before the court.[7] Verizon's failure to document how it calculates the Effect of City Tax is similarly unimportant. Many vendors do not expressly disclose their calculation of taxes and fees. A retail receipt in Washington likely assesses sales tax, but likely does not explain the system of varying rates and exemptions that underlies each assessment. Every airline passenger now pays a "September 11 Security Fee" or similar charge when she purchases a ticket, but receives no disclosure of how the government or airline calculates the fee. Indeed, Verizon assesses the Federal Universal Service fee, the Regulatory Charge, and the Administrative Charge without explaining how it calculates any of them, and Plaintiffs do not challenge the practice. Common experience dictates that point-of-sale disclosure of the methodology for assessing taxes and fees is the exception in a retail transaction. Plaintiffs cite no authority for the proposition that a business must make such disclosures.

Having reviewed the disclosures Verizon provides regarding the Effect of City Tax, the court turns to each of Plaintiffs' claims for relief.

## 1. Breach of Contract

As described above, the court finds that, as a matter of law, the Agreement adequately discloses Verizon's right to impose fees "related to" its governmental costs, whatever name it might ascribe to those fees. Plaintiffs do not assert that the Effect of City Tax is unrelated to Verizon's governmental costs, and thus they do not state a claim for breach of contract.

 Alternatively, Plaintiffs assert that the Agreement gives Verizon a "blank check" to levy charges of any amount on consumers, so long as Verizon can claim a relationship between those charges and its governmental costs. They contend that the Agreement might just as well state that Verizon will assess "additional unexplained and unjustified charges in such amounts that, in its discretion, it may de-

---

6. In its motion, Verizon asserts that the Effect of City Tax fee is its way of recouping utility taxes imposed by some, but not all, Washington municipalities. The court cannot accept this assertion in reviewing a motion to dismiss, as it is not contained within the Complaint. Verizon attempts to remedy this by requesting judicial notice of Washington Utilities and Transportation Commission ("WUTC") documents that explain the Effect of City Tax. Verizon Req. for Jud. Notice, Exs. I–K. Even if these documents were appropriate for judicial notice, they reveal nothing about *Verizon's* assessment of the fee. More importantly, the court cannot assume, on a motion to dismiss, that a consumer concerned about the Effect of City Tax would find the WUTC documents or rely on them as a description of Verizon's practices.

7. At oral argument, Verizon asserted that RCW 35.21.873 imposes an obligation on wireless phone customers to contact their carriers before bringing suit over a carrier's assessment of a utility surcharge. The court declines to reach this issue, as Verizon raised it for the first time at oral argument.

cide to impose." Opp'n at 11. Plaintiffs contend that this renders the Agreement illusory, but this is not so. As Plaintiffs admit, a contract is illusory only if it is too indefinite to enforce, or if its terms make performance optional by one of the parties. Opp'n at 12 (citing *Zuver v. Airtouch Commc'ns, Inc.*, 153 Wash.2d 293, 103 P.3d 753, 766 (2004)). Neither Verizon nor the consumer has the discretion to avoid their obligations under the Agreement, and the claim that the contract is too indefinite to enforce is not properly before the court. Assessing this argument would require the court, at a minimum, to construe the "related to governmental costs" language to determine if it is sufficiently definite. Verizon offered no argument regarding the construction of the language, because the Complaint did not place it on notice that construction was at issue. Instead, as noted above, the Complaint alleges that Verizon did not properly disclose the Effect of City Tax fee[8], and bases its breach of contract claim on Verizon's assessment of that fee without contractual authorization. Verizon has fairly met that claim, and has demonstrated that the court should dismiss it.

### 2. Consumer Protection Act

▮ Among other things, a plaintiff asserting a CPA claim under RCW 19.86.020 must prove that the defendant engaged in "an unfair or deceptive act or practice." *Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.*, 162 Wash.2d 59, 170 P.3d 10, 17 (2007); *see also Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash.2d 778, 719 P.2d 531, 533 (1986)

(stating five elements of a CPA claim). When there is no dispute about what the defendant did, the court may determine as a matter of law whether a practice is unfair or deceptive. *Indoor Billboard*, 170 P.3d at 18 (quoting *Leingang v. Pierce County Med. Bureau, Inc.*, 131 Wash.2d 133, 930 P.2d 288 (Wash.1997)). In determining whether an act is "deceptive" under the CPA, the court looks not to the defendant's intent, but to whether the act has the capacity to materially deceive a substantial portion of the public. *Id.* The CPA's prohibition on "unfair" practices makes "per se unfair" practices actionable. *Hangman Ridge*, 719 P.2d at 535; *see also Saunders v. Lloyd's of London*, 113 Wash.2d 330, 779 P.2d 249, 256–57 (1989). A practice is per se unfair when it violates a "statute which has been declared by the Legislature to constitute an unfair or deceptive act in trade or commerce." *Hangman Ridge*, 719 P.2d at 535.

▮ In this case, there is no dispute regarding the content of Verizon's disclosures, and the court can determine as a matter of law that the disclosures are neither deceptive nor unfair. Plaintiffs do not assert that Verizon's disclosures are per se unfair. As to the claim that the disclosures have the capacity to deceive a substantial portion of the public, the court rejects that claim for the reasons stated above. Verizon adequately discloses that it reserves the right to assess additional fees related to its governmental costs, and labeling one of those additional fees an "Effect of City Tax" is not deceptive.

Plaintiffs rely on *Indoor Billboard* and *Dwyer v. JI Kislak Mortgage Corp.*, 103

---

**8.** Plaintiffs' "blank check" argument raises numerous other questions that neither party addresses, including but not limited to the following: If the portion of the Agreement allowing Verizon to impose surcharges "related to" its governmental costs is unenforceable, is the entire contract unenforceable? If the contract language is indefinite as to the Effect of City Tax, what is the effect of Verizon's subsequent disclosure of the Effect of City Tax in monthly invoices?

Wash.App. 542, 13 P.3d 240 (2000), in support of their CPA claims, but both cases are easy to distinguish. In *Indoor Billboard*, the court found that a telecommunications company's practice of billing a particular fee "under the heading of 'Taxes and Surcharges' on its invoices" was deceptive, because it gave consumers the impression that the fee was "regulated by the FCC." 170 P.3d at 18. In this case, Verizon emphasizes that the surcharges it assesses "are Verizon Wireless charges, not taxes." Agreement at 3. Moreover, it assesses those charges in the "Verizon Wireless' Surcharges" section of the invoice, not the "Taxes, Governmental Surcharges and Fees" section. Verizon, unlike the defendant in *Indoor Billboard*, thus ensures that no reasonable consumer would find the "Effect of City Tax" fee to be a tax or mandatory government charge. In *Dwyer*, a mortgage company violated the CPA by including miscellaneous service fees on a mortgage payoff statement, because the inclusion of the charge implied that the company would not release the deed of trust unless the consumer paid the fees. 13 P.3d at 243. Here, Verizon disclosed from the inception of its relationship with each Plaintiff that it could charge additional fees "related to" its governmental costs, and disclosed that customers would be billed monthly for such fees. Neither *Indoor Billboard* nor *Dwyer* supports Plaintiffs' CPA claims.

### 3. Unjust Enrichment and Declaratory Judgment

Plaintiffs admit that their unjust enrichment claim exists solely as an alternative theory of recovery in the event that Verizon's duty not to assess the Effect of City Tax were found to arise from an extra-contractual source. Pltfs.' Opp'n at 13–14. Plaintiffs have not shown that such a duty exists, extra-contractually or otherwise. For that reason, their unjust enrichment claim fails.

Plaintiffs also request declaratory judgment that Verizon's disclosures of the Effect of City Tax are deficient. For the reasons stated above, that claim fails too.

### D. The Court Declines to Determine the Effect of the 2004 California Class Action Settlement.

As previously noted, Verizon asserts that the participation of Mr. Hunt and Mr. Smale in a 2004 California nationwide class action settlement is an additional basis to dismiss their claims. The court's decision to dismiss the Complaint for failure to state a claim makes it unnecessary to reach these arguments, as Defendants conceded in oral argument.[9] In addition, Verizon concedes that Ms. Cooper was not a member of the settlement class in the California action. Even if Verizon were to prevail in its assertion that the settlement extinguishes Mr. Hunt's and Mr. Smale's claims, it would not dispose of this action.

### E. The Court Grants Plaintiffs Leave to Amend and Vacates All Case Management Deadlines.

The court's dismissal of this action is without prejudice, because Plaintiffs may be able to amend the Complaint to state claims based on Verizon's assessment of the Effect of City Tax. *See Reddy v. Litton Indus., Inc.,* 912 F.2d 291, 296–97 (9th Cir.1990) (court should grant leave to amend unless no amendment could cure the complaint's deficiencies). It appears,

---

9. Both parties acknowledge that Verizon's disclosures to customers have been the subject not only of one or more class action settlements, but of "voluntary assurance" agreements with many states' Attorneys General. The court's disposition of this motion makes it unnecessary to consider the effect of these agreements.

however, that in order to state valid claims, Plaintiffs will need to add allegations that go substantially beyond the scope of the Complaint before the court. For that reason, the court finds that it would be inappropriate to permit discovery or otherwise continue this action on its existing case schedule. The court will therefore vacate all existing case deadlines, including the trial date. Plaintiffs must file an amended complaint no later than May 2, 2008, and the court will enter a new case management order thereafter. If Plaintiffs do not file an amended complaint, the court will enter judgment dismissing this action without prejudice. Because of this disposition, Verizon's motion for a protective order staying discovery is moot.

## IV. CONCLUSION

For the reasons stated above, the court GRANTS Verizon's motion to dismiss (Dkt. # 20). The court VACATES all case management deadlines in this action, and therefore DENIES Verizon's motion for a protective order (Dkt. # 23) as moot. Plaintiffs shall file an amended complaint no later than May 2, 2008, or the court will direct the clerk to enter judgment dismissing this action without prejudice in accordance with this order.[10]

**10.** At the conclusion of oral argument, the court granted Verizon leave to file a two-page brief addressing a ruling from the Honorable John C. Coughenour of this District in *Hesse v. Sprint Spectrum, L.P.,* Case No. C06–592JCC. Plaintiffs apparently did not bring the ruling to Verizon's attention until oral argument, which is curious, because Judge Coughenour made the ruling in February 2007. In any event, the court finds that additional discussion of that ruling would be of no assistance in deciding this motion. Verizon need not file a supplemental brief.